IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| AJC LOGISTICS, LLC; AJC INTERNATIONAL, INC.; AND UNDERWRITERS AT LLOYD'S OF LONDON | |
|    Plaintiffs | |
|     Vs. | |
| ECONOMY INTERNATIONAL SERVICES, INC.; JOHN DOE AND JANE DOE AND INSURANCE COMPANIES X, Y, Z | CIVIL NO. 2011-_____ |
|    Defendants | |

**COMPLAINT**

TO THE HONORABLE COURT:

The appearing parties, AJC Logistics, LLC; AJC International, Inc.; and the Underwriters at Lloyd's of London (hereinafter the "plaintiffs" collectively), through the undersigned attorneys, respectfully inform and pray as follows:

**I.     PARTIES**

1.     The plaintiffs, AJC Logistics, LLC, and AJC International, Inc. (hereinafter collectively "AJC"), are companies organized and existing under the laws of the State of Georgia, with their principle place of business in Atlanta, Georgia.  AJC Logistics, LLC is registered as a foreign corporation before the Puerto Rico Department of State, and is duly authorized to do business in Puerto Rico.  AJC International, Inc. is not registered before the Puerto Rico Department of State.  AJC's address is: 5188 Roswell road, Atlanta, GA 303342.

-2-

2.      The plaintiff, Underwriters at Lloyd's of London (hereinafter individually "Underwriters at Lloyd's"), was and still is an underwriting syndicate organized and existing under the laws of the United Kingdom, with its principal place of business at One Lime Street, London, United Kingdom, EC3M 7HA.

3.      The defendant, Economy International Services, Inc. (hereinafter the "defendant" or "Economy"), is a corporation organized pursuant to the laws of Puerto Rico, with its principle place of business in Guaynabo, Puerto Rico.  Economy's address is: Calle Mario Julia #12A, Industrial Park, Guaynabo, P.R. 00969.

4.      The plaintiffs designate as John Doe and Jane Doe, any other persons, companies, or corporations that incurred in fault or negligent acts relating to the maintenance, care, or repairs of the equipment at the Economy's facility and that could be held responsible to AJC for the acts, cause of actions, and damages that are alleged in this Complaint.  These persons are being identified by fictitious names for lack of knowledge at this time of their actual identities.  The plaintiffs will amend this Complaint to allege their true names and capacities when they have been ascertained.  The plaintiffs are informed and believe, and based thereupon allege, that each of such fictitiously named defendants are jointly and/or severally responsible for the occurrences herein alleged.

5.      The plaintiffs designate as Insurance Companies X, Y, Z, and any insurance company that has issued an insurance policy that would cover the acts, cause of actions, and damages that are alleged in this Complaint.  These insurance companies are being identified by fictitious names for lack of knowledge at this time of their actual identities.  The plaintiffs will amend this Complaint to allege their true names and capacities when they have been ascertained.

-3-

## II.   JURISDICTION AND VENUE

6.      This Honorable Court has jurisdiction to entertain this action under its diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), as this suit is between AJC, citizens of the State of Georgia, and plaintiff Underwriters at Lloyd's, a citizen of the United Kingdom, and the defendant Economy, a citizen of Puerto Rico, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interests, costs and attorney fees.

7.      Pursuant to 28 U.S.C. § 1391(a), venue is proper in this Court because all defendants reside in this judicial district and substantial part of the events and/or omissions that give rise to this suit occurred within this judicial district.

## III.   FACTUAL ALLEGATIONS

8.      The AJC plaintiffs are international freight forwarders which provide ocean and air freight management services and third party logistics to importers and exporters in the United States including Puerto Rico.

9.      On or before September 2010, AJC transported various shipments of good/commodities from its suppliers in the mainland United States to Puerto Rico for distribution throughout Puerto Rico.

10.     The goods/commodities in question are comprised of various frozen items of seafood, chicken, and beef, including grouper, sea food mix, snapper fillets, snapper steak, mahi mahi portions, kingfish, shrimp, salmon, surimi, basa fish, chicken patties, chicken wings, chicken drums and thighs, white check cubes, chicken shish cabob, and beef patties.

11.     At all times relevant to this action, AJC served as the third party logistics carriers that transported the good/commodities in question to Puerto Rico.  Moreover, since AJC paid the suppliers directly, AJC is the rightful title holders of the good/commodities in question.

-4-

12.　　At all times relevant to this action, AJC maintained in place insurance on the goods/commodities in question under the Underwriters at Lloyd's subscribing to Policy Number MC10ACXU.

13.　　At all times relevant to this action, Economy was engaged in the business of storing perishable goods, specially frozen items in its walk-in freezers located at its warehouse facilities in Guaynabo's Industrial Park.

14.　　On or before September 2010, AJC contracted with Economy for Economy to provide cold storage for the goods/commodities in question until they were to be delivered to various retail distribution centers throughout Puerto Rico.  As part of the agreement with Economy, all of AJC's frozen goods/commodities were to be kept at the manufacturers' recommended temperature, which was not higher than zero degrees (-0.0°F) Fahrenheit.

15.　　On or before September 2010, the goods/commodities in question were transported to Economy for the safe care and conservation until the goods/commodities were to be delivered to various AJC customers throughout Puerto Rico.

16.　　After the various shipments containing the goods/commodities in question arrived at Economy's cold storage facility, Economy issued a Receiving Document for each of the shipments.

17.　　Economy had no exceptions upon the receipt of the shipments containing the good/commodities in question.

18.　　On September 19, 2010, AJC received notification from Economy that the walk-in freezers where AJC's goods/commodities were stored had malfunctioned dating back to August 26, August 30, and September 6, 2010.

-5-

19.     As a result of these freezers malfunctioning, various shipments of AJC's frozen seafood, chicken, and beef were exposed to temperature abuse for extended periods of time while at Economy's cold storage facility.

20.     As a result of AJC's goods/commodities being exposed to temperature abuse, a large number of the goods/commodities were damaged making them questionable for their intended purpose of human consumption.

21.     As a result of Economy not notifying AJC in a timely manner, and allowing the delivery of the goods/commodities in question to various AJC customers throughout Puerto Rico, AJC had to recall a large quantity of the frozen seafood, chicken, and beef already delivered.

22.     As a consequence of the above, AJC suffered a loss of their goods/commodities and incurred miscellaneous expenses associated with the loss of goods/commodities estimated at approximately $1,002,475.00.

23.     AJC has made a timely notice of claim upon Economy for reimbursement of their losses, but Economy has, to date, failed to consider AJC's claim.

24.     As a result of AJC's losses, Underwriters at Lloyd's under the policy MC10ACXU has, or will, pay AJC the covered amount of the claim.

**FIRST CAUSE OF ACTION**
**BREACH OF THE DEPOSITUM CONTRACT**

25.     The plaintiffs plead and reallege all of the allegations set forth in paragraphs 1 through 24 above.

-6-

26.      A depositum contract was constituted from the time Economy received the goods/commodities in question belonging to AJC with the obligation of keeping and delivering them to a person designated by AJC.  Tit. 31 P.R. Laws Ann. § 4621.

27.      Under Puerto Rico law, Economy, as a bailee, was under a legal duty to engage in the necessary actions to protect and conserve the object of the contract, which in this case was the large quantity of frozen seafood, chicken and beef delivered to Economy for the safe care and conservation in its cold storage facility until these goods/commodities were to be delivered to AJC's customers.  "A bailee is obligated to keep the thing, and, when required, to return it to the bailor or to his legal representatives, or to the person who may have been designated in the contract."  Tit. 31 P.R. Laws Ann. §4661.

28.      Under Puerto Rico law, Article 1054 of the Puerto Rico Civil Code, "[t]hose who in fulfilling their obligations are guilty of … negligence … and those who in any manner whatever act in contravention of the stipulations of the same, shall be subject to indemnify for the losses and damages caused thereby."  Tit. 31 P.R. Laws Ann. §3018.

29.      Fault or negligence "consists of the omission of the steps which may be required by the character of the obligation and which may pertain to the circumstances of the persons, time, and place."  Tit. 31 P.R. Laws Ann. §3021.

30.      Economy, as the owner and operator of a storage or deposit of goods facility, is liable for the omissions of the steps which may be required by the character of the obligation and which may pertain to the circumstances of the persons, time, and place.

-7-

31.     Pursuant to the agreement with AJC, Economy, among other things, had the duty to maintain the freezers designated to store AJC's goods/commodities at the manufacturers' recommended temperature, which was not higher than zero degrees (-0.0°F) Fahrenheit at all times.

32.     Upon information and belief, on August 26, August 30, and September 6, 2010, Economy breached its duty of safe care and conservation of the good/commodities in question when it allowed the temperature inside the designated freezers where AJC's goods were stored to reach dangerously high temperatures for extended periods of time, without taking the necessary precautions to protect and conserve the goods/commodities in question.

33.     Under Puerto Rico law, "[w]henever the thing should be lost, when in the possession of the [bailee], it shall be presumed that the loss occurred by his fault and not by a fortuitous event, unless there is proof to the contrary…." Tit. 31 P.R. Laws Ann. §3192.

34.     Pursuant to the agreement, Economy is liable to AJC for the loss or damage of AJC's goods/commodities because Economy, its employees, its agents, or its contractors negligently allowed the goods/commodities in question to sustain temperature abuse for extended periods of time.

35.     The loss or damage of the goods/commodities in question, sustained by AJC, were a direct result of the negligence, fault, carelessness, omissions and negligent acts of Economy, its employees, its agents, or its contractors for among other things:

     a.  Failing to properly maintain the freezers designated to store AJC's goods/commodities;

     b.  Failing to perform their work and services in a professional and appropriate manner in accordance with industry customs and practices;

-8-

c.  Failing to properly hire, train, instruct, and supervise their employees, agents contractors, and servants;

d.  Failing to properly check and verify the temperatures of the freezers in accordance with industry customs and practices;

e.  Failing to maintain properly working and operating thermostats or temperature reading equipment;

f.  Failing to maintain and keep a temperature log and to have established procedures and policies in place that the temperatures inside the freezers must be constantly checked, monitored, and recorded;

g.  Failing to ensure that proper procedures were in place to prevent the temperature inside the freezers to reach unsafe levels, and specifically that the freezers designated to store AJC's goods/commodities did not reach temperatures above the manufacturers' recommended temperature, which was not higher than zero degrees (-0.0°F) Fahrenheit at all times;

h.  Failing to warn and provide AJC proper and timely notice that AJC's goods/commodities were damaged as consequence of being exposed to temperature abuse for an extended period of time; and

i.  Allowing the delivery of AJC's goods/commodities, that were damaged as consequence of being exposed to temperature abuse for an extended period of time, to several of AJC's customers throughout Puerto Rico.

-9-

36.     As consequence of the above, the defendants are liable to the plaintiffs for all the losses and damages incurred, and that could be incurred, as a result of the breach of the depositum contract permitting AJC's goods/commodities to sustain temperature abuse for extended periods of time, without taking the necessary precautions to protect and conserve same.

### SECOND CAUSE OF ACTION
### PUERTO RICO WAREHOUSE ACT

37.     The plaintiffs plead and reallege all of the allegations set forth in paragraphs 1 through 24 above.

38.     Under the Puerto Rico Commercial Code a "warehouseman means a person lawfully engaged in the business of storing agricultural product…."  Tit. 10 P.R. Laws Ann. §342.

39.     "A warehouseman shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise…."  Tit. 10 P.R. Laws Ann. §411.

40.     When goods that are in the possession or custody of a warehouseman or operator of the warehouse are lost or damaged it is presumed that the loss was due to the fault or negligence of the warehouseman or operator of the warehouse.

41.     As Economy is in the business of providing cold storage units for the storing of agriculture products, it acted as a warehouseman when it took delivery and stored AJC's goods/commodities.

-10-

42.      Economy is liable to AJC for the loss or damage of AJC's goods/commodities because Economy negligently allowed the goods/commodities in question to sustain temperature abuse for extended periods of time, without taking the necessary precautions to protect and conserve same.

43.      The loss or damage of the goods/commodities in question, sustained by AJC, was a direct result of the negligence, fault, carelessness, omissions and negligent acts of Economy, its employees, its agents, or its contractors for among other things:

    a.  Failing to properly maintain the freezers designated to store AJC's goods/commodities;

    b.  Failing to perform their work and services in a professional and appropriate manner in accordance with industry customs and practices;

    c.  Failing to properly hire, train, instruct, and supervise their employees, agents, contractors, and servants;

    d.  Failing to properly check and verify the temperatures of the freezers in accordance with industry customs and practices;

    e.  Failing to maintain properly working and operating thermostats or temperature reading equipment;

    f.  Failing to maintain and keep a temperature log and to have established procedures and policies in place that the temperatures inside the freezers must be constantly checked, monitored, and recorded;

-11-

g.  Failing to ensure that proper procedures were in place to prevent the temperature inside the freezers to reach unsafe levels, and specifically that the freezers designated to AJC's goods/commodities did not reach temperatures above the manufacturers' recommended temperature, which was not higher than zero degrees (-0.0°F) Fahrenheit at all times;

h.  Failing to warn and provide AJC proper and timely notice that AJC's goods/commodities were damaged as consequence of being exposed to temperature abuse for an extended period ; and

i.  Allowing the delivery of AJC's goods/commodities, that were damaged as consequence of being exposed to temperature abuse for an extended period of time, to several of AJC's customers throughout Puerto Rico.

44.  As consequence of the above, the defendants are liable to the plaintiffs for all the losses and damages incurred, and that could be incurred, as a result of the breach of their duty as warehouseman, when they permitted AJC's goods/commodities to sustain temperature abuse for extended periods of time, without taking the necessary precautions to protect and conserve same.

### THIRD CAUSE OF ACTION
#### NEGLIGENCE

45.  The plaintiffs plead and reallege all of the allegations set forth in paragraphs 1 through 24 above.

46.  Article 1802 of the Civil Code, imposes liability upon a person for an "act or omission" that "causes damages to another through fault or negligence."  Tit. 31 P.R. Laws Ann. § 5141.

-12-

47.     Economy, its employees, and its agents acted negligently by permitted AJC's goods/commodities to sustain temperature abuse for an extended period of time, without taking the necessary precautions to protect and conserve same.

48.     Economy had a duty to provide a proper functioning cold storage facility with designated freezers for the storage of AJC's goods/commodities at temperatures not to exceed the manufacturers' recommended temperature, which was not higher than zero degrees (-0.0°F) Fahrenheit, free from negligence, and to protect AJC's goods/commodities from loss or damage while they were in Economy's custody, possession, and control.

49.     On at least three occasions, namely on August 26, August 30, and September 6, 2010, the temperature inside the designated freezers for the storage of AJC's goods/commodities reached dangerously high and unsafe levels for extended periods of time.

50.     Because of these high temperatures and Economy's failure to take adequate precautions to protect and conserve AJC's goods/commodities these goods were damaged.

51.     The loss or damage of the goods/commodities in question, sustained by AJC, was a direct result of the negligence, fault, carelessness, omissions and negligent acts of Economy, its employees, its agents, or its contractors for among other things:

     a.  Failing to properly maintain the freezers designated to store AJC's goods/commodities;

     b.  Failing to perform their work and services in a professional and appropriate manner in accordance with industry customs and practices;

     c.  Failing to properly hire, train, instruct, and supervise their employees, agents, contractors, and servants;

-13-

d.  Failing to properly check and verify the temperatures of the freezers in accordance with industry customs and practices;

e.  Failing to maintain properly working and operating thermostats or temperature reading equipment;

f.  Failing to maintain and keep a temperature log and to have established procedures and policies in place that the temperatures inside the freezers must be constantly checked, monitored, and recorded;

g.  Failing to ensure that proper procedures were in place to prevent the temperature inside the freezers reach unsafe levels, and specifically that the freezers designated to AJC's goods/commodities that did not reach temperatures above the manufacturers' recommended temperature, which was not higher than zero degrees (-0.0°F) Fahrenheit at all times;

h.  Failing to warn and provide AJC proper and timely notice that AJC's goods/commodities were damaged as consequence of being exposed to temperature abuse for extended periods of time; and

i.  Allowing the delivery of AJC's goods/commodities, that were damaged as consequence of being exposed to temperature abuse for extended periods of time, to several of AJC's customers throughout Puerto Rico.

52.  As consequence of the above, the defendants are liable to the plaintiffs for all the losses and damages incurred, and that could be incurred, as a result of their fault, negligent acts or omissions when they permitted AJC's goods/commodities to sustain temperature abuse for extended periods of time, without taking the necessary precautions to protect and conserve same.

-14-

### FOURTH CAUSE OF ACTION
### SUBROGATION

53.     The plaintiffs plead and reallege all of the allegations set forth in paragraphs 1

through 24 above.

54.     Underwriters at Lloyd's issued an insurance policy, Policy No. MC10ACXU,

which covers the goods/commodities in question.

55.     AJC has a potential claim to the Underwriters at Lloyd's pursuant to Policy No.

MC10ACXU for the loss or damage of the goods/commodities in question.

56.     AJC's claim is under evaluation and the Underwriters at Lloyd's is joined as a

party with real and direct interest to claim subrogation for the amount paid, or to be paid, to AJC.

Tit. 31 P.R. Laws Ann. § 3250.

### FIFTH CAUSE OF ACTION
### DIRECT ACTION

57.     The plaintiffs plead and reallege all of the allegations set forth in paragraphs 1

through 24 above.

58.     Pursuant to Puerto Rico law, the plaintiffs have a direct action against the above

mentioned Insurance Companies X, Y, and Z since they issued an insurance policy to Economy,

or to co-defendants John Doe and/or Jane Doe, that covers the losses and damages that are

alleged in this Complaint.  Tit. 26 P.R. Laws Ann. § 2001.  Insurance Companies X, Y, and Z

are, therefore, liable to the plaintiffs for all the losses and damages suffered and incurred, or that

could be incurred, as a result of the loss or damage of AJC's goods/commodities in question.

-15-

## IV.   DAMAGES

59.   As a result of the facts presented above, the plaintiffs have suffered and incurred approximately $1,002,475.00 in losses and damages, which include, but are not limited to, the market value of the damaged goods/commodities in question, the costs of transportation, storage, numerous surveys and investigations, and loss of goodwill associated with the delivery of damaged goods/commodities.

60.   For the reasons stated above, AJC demands that judgment be entered in its favor and against the defendants jointly and/or severally.

WHEREFORE, AJC Logistics, LLC; AJC International, Inc.; and the Underwriters at Lloyd's of London, respectfully pray that this Honorable Court grant relief in the amount of $1,002,475.00 as requested in this Complaint, and that it also grant any other relief as may be just and necessary, including costs and reasonable attorney's fees.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico this 25th day of August, 2011.

/s/**ALEJANDRO MÉNDEZ ROMÁN**
USDC-PR NO. 226904
/s/**MANOLO T. RODRÍGUEZ BIRD**
USDC-PR NO. 206307
Attorneys for Plaintiff
JIMENEZ, GRAFFAM & LAUSELL
PO BOX 366104
SAN JUAN, PR  00936-6104
TEL. (787) 767-1030
FAX (787) 751-4068