IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

AJC LOGISTICS, LLC, et al.

Plaintiffs,

v.

ECONOMY INTERNATIONAL
SERVICES, INC., et al.

Defendants.

CIVIL NO. 11-1834 (FAB/CVR)

**REPORT AND RECOMMENDATION**

**INTRODUCTION**

**A.    Plaintiffs' Motion for Summary Judgment.**

Plaintiffs AJC Logistics, LLC,  AJC International Inc. (hereinafter referred to jointly as "AJC"), and Underwriters at Lloyd's of London ("Lloyd's" and with AJC, "Plaintiffs") filed a motion for summary judgment.  Plaintiffs request judgment be entered in their favor against co-defendant Triple-S Propiedad ("Triple-S") for Insurance Policy No. CP-081038479-0/000 (the "Policy") issued to co-defendant Economy International Services, Inc. ("Economy") provides coverage limit of $500,000.00 for loss of property owned to Plaintiffs as a result of the equipment breakdown at Economy's cold storage facility. (Docket Nos. 45-47).  Plaintiffs filed the Amended Complaint to recover the loss sustained as a result of a mechanical breakdown while various shipments of AJC's frozen seafood, chicken, and beef were stored at Economy's cold storage facility, being exposed to temperature abuse for extended periods and making them unfit for human consumption. (Docket No. 5). Co-Plaintiff Lloyd's, in turn, was joined as a party with interest as it issued

an insurance policy on behalf of AJC on the goods/commodities in question and, therefore, is potentially liable for the loss suffered by AJC.  Id. at ¶¶ 14, 55-58.[1]

Co-defendant Triple-S filed its opposition to above summary judgment motion alleging the insurance policy issued to Economy does not provide coverage limit as requested of $500,000.00 for spoilage loss.  Rather, Triple-S avers, its limit is $25,000.00 under a policy endorsement and such payment was already issued and accepted by co-defendant Economy.  (Docket Nos. 54 and 55).  Plaintiffs filed the corresponding reply (Docket Nos. 62 and 63), to which Triple-S opposed. (Docket No. 67).  These issues are closely intertwined with Triple S' own motion for summary judgment as to the policy and limits of insurance for the loss suffered by AJC. (Docket No. 52-53).[2]

**B.      Defendant Triple-S' Motion for  Summary Judgment.**

Triple-S filed its own motion for summary judgment claiming that the Policy for Economy has a limited coverage of $25,000.00 for spoilage claims under its Equipment Breakdown Endorsement and it had already paid said limit without further obligation due to Plaintiffs.  Triple-S submits its commercial policies for Economy exclude coverage damages resulting from equipment breakdown and for damages as a result of changes in temperature.  Therefore, Economy purchased a separate Equipment Breakdown Endorsement to cover its refrigeration equipment, which provides coverage for loss of perishable good to spoilage caused by an accident to covered equipment. Said endorsement

---

[1] Economy is presently in default. (Docket No. 29).  Economy's default, however, does not mean it admits to the legal conclusions made in the complaint inasmuch as legal conclusions are not deemed admitted as a result of the entry of default. See e.g., 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 2688, at 63 (3d ed.1998).

[2] Having these matters been referred for report and recommendation, separate pleadings on summary judgment issues were requested to facilitate the presiding Court's review. (Docket No. 51).

specifically limits coverage to $25,000.00, which Triple-S already paid. Economy had also purchased a separate and additional coverage for spoilage and was issued a Spoilage Coverage Endorsement with a limit of $50,000.00 and $50,000.00 in excess. However, the Spoilage Coverage Endorsement purchased by Economy applied only to losses due to power outage for Economy chose not to purchase a separate Spoilage Coverage Endorsement for losses due to "Breakdown or Contamination." (Docket Nos. 52 and 53).

Triple-S also requests that co-plaintiff Lloyd's allegations be dismissed as Lloyd has not paid to its insured or to third parties and, thus, it has no valid cause of action of subrogation upon its lack of payment. (Docket No. 52, section G, pp. 3 and 22-23).

On June 17, 2013, Plaintiffs filed their Opposition to Triple S' motion for summary judgment with a statement of contested facts. (Docket Nos. 56 and 57). As with AJC's motion for summary judgment, the parties filed their corresponding replies and sur-replies. (Docket Nos. 66 and 70).

For the reasons stated below, and upon careful consideration of the parties' submissions (including eight (8) motions and over fifty (50) exhibits), and applicable law, it is recommended that Triple-S' Motion for Summary Judgment be **GRANTED** and Plaintiffs' Motion for Summary Judgment be **DENIED**.

## RELEVANT FINDINGS OF FACT

Plaintiffs' request for summary judgment and co-defendant's opposition and counter motion do not contest the loss claimed in the Amended Complaint of frozen food commodities that were owned by AJC and which had been deposited in Economy's walk-in freezer warehouse facilities to be thereafter delivered to various AJC customers through

AJC Logistics, LLC, et al v. Economy International Services, Inc., et al
Civil No. 11-1834 (FAB/CVR)
Report and Recommendation
Page 4

Puerto Rico.   (Docket No. 46, Plaintiff's Statement of Uncontested Material Facts ("PSUMF") ¶ 9 and Docket No. 55, Triple-S Counter Statement of Uncontested Material Facts "DCSUMF" ¶ 9). [3]

At times relevant, co-defendant Economy was engaged in the business of storing perishable goods, specially frozen items in its walk-in freezers located at its warehouse facilities in Guaynabo's Industrial Park. PSUMF ¶ 5 and DCSUMF ¶ 5.

Co-defendant, Manuel Espinosa Casanova, is the President and Secretary of Economy International Services, Inc. PSUMF ¶ 6 and DCSUMF ¶ 6.

On or before August 26, 2010, the goods/commodities in question were transported to Economy's cold storage facility until the goods/commodities were to be delivered to various AJC customers throughout Puerto Rico. PSUMF ¶ 9 and DCSUMF ¶ 9.   The goods/commodities in question are comprised of various frozen items of seafood, chicken, and beef, including grouper, sea food mix, snapper fillers, snapper steak, mahi mahi portions, kingfish, shrimp, salmon, surimi, basa fish, chicken patties, chicken wings, chicken drums and thighs, white check cubes, chicken shish cabob, and beef patties. PSUMF ¶ 3 and DCSUMF ¶ 3.

On September 19, 2010, AJC received notice from Economy informing that its freezers holding the goods/commodities had malfunctioned dating back to August 26, 30

---

[3] Paragraphs 1 to 23 of PSUMF relate to the purchase, receipt, handling and mechanical breakdown that resulted in the loss of frozen items of plaintiffs under the custody and control of Economy.  (Docket No. 46, PSUMF ¶¶ 1-23).  As to these statements, co-defendant Triple-S' opposition is limited to the proper name of the rightful title-holder of the goods/commodities, whether AJC International, Inc. or AJC Logistics, LLC.  Furthermore, co-defendant Triple-S has admitted to paragraphs 2-3, 5-6, 10-13, 16, 19-23.  The statements opposed at 1, 4,  7-8, and 17 are not relevant to the Insurance Policy limits at issue. (Docket No. 55, DCSUMF ¶¶ 1-23).

and September 30,2010.  PSUMF ¶ 13 and 15; DCSUMF ¶ 13 and 15.  Thereafter, AJC received a tally of damaged product identified by Economy.

Thereafter, the United States Department of Agriculture deemed the beef and chicken food product were unfit for human consumption and ordered their destruction. PSUMF ¶ 16; DCSUMF ¶ 16. The seafood was exposed to the same conditions as the beef and chicken products and was destroyed.  PSUMF ¶ 18 and DCSUMF ¶ 18.

## A.   THE POLICY

It is also uncontested that Economy had been issued Insurance Policy No. CP-081038479-0/000[4] by co-defendant Triple-S from the period of August 7, 2010 through August 7, 2011.  The name of the insured under Triple-S' Insurance Policy is Manuel Espinosa DBA Economy International Services in Mario Juliá Industrial Park, A Street Lote 12, San Juan, PR 00918. PSUMF ¶¶ 24-25 and DCSUMF ¶¶ 24-25.  Plaintiffs are not listed as insureds or additional insureds under the Policy . Id.  As to the insurance coverage, the Policy states the insurance at the described premises applies only for coverage for which a limit of insurance is shown and such is subject to all of its terms, conditions, exclusions and limitations - which is an issue of law and not a disputed fact.  PSUMF ¶ 26 and DCSUMF ¶ 26.

It is also uncontested that AJC maintained in place insurance on the commodities in question with co-plaintiff Lloyd's, under Policy Number MC10ACXU. PSUMF ¶ 51; DCSUMF ¶ 51; see also, Plaintiffs' Opposition to Triple-S' Uncontested Material Facts "AJC's CSUMF" ¶ 7. Economy International is a named insured under the Policy issued by

---

[4] Renewal of 30-CP8-001037942-0.

AJC Logistics, LLC, et al v. Economy International Services, Inc., et al
Civil No. 11-1834 (FAB/CVR)
Report and Recommendation
Page 6

Lloyd's.  See, Triple-S' Statement of Uncontested Material Facts in Support of its Motion for Summary Judgment ("Triple-SUMF") ¶ 46 and AJC's CSUMF ¶ 46.

The Policy at issue consists of the following coverage parts: (I) Commercial Property Coverage; (ii) Commercial General Liability Coverage; and (iii) Commercial Inland Marine Coverage.  Triple-S UMF ¶ 22 and AJC's CSUMF ¶ 22.[5]

The Commercial Inland Marine Coverage covers specialized equipment scheduled or described in the Policy.  Plaintiffs' property is not scheduled or described in the Commercial Inland Marine Form of the policy and, accordingly, not covered by the Commercial Inland Marine Coverage. Triple-S UMF ¶ 23 and AJC's CSUMF ¶ 23.

The Commercial General Liability Coverage Form contained in the Policy excludes from coverage "Property Damage" to: "Personal property in the care, custody or control of the insured"  Triple-S UMF ¶ 24 and AJC's CSUMF ¶ 24; see also Section 2j(4) of the Commercial General Liability Coverage Form, Docket No. 53, Exhibit 14.

The Commercial Property Coverage, contains a Building and Personal Property Coverage Form.  Section A of the Building and Personal Property Form provides coverage "for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." Triple-S UMF ¶ 25 and AJC's CSUMF ¶ 25; see also Section A of the Building an Personal Property Coverage Form, Docket No. 46, Exhibit 19.

---

[5] A complete copy of the Policy was filed by Triple-S as Exhibit 5 of Docket No. 55.  However, to facilitate the presiding Court's review, the undersigned refers to the Exhibit number under which the relevant Policy, Declarations, Coverage Forms and Special Forms were individually submitted by the parties.

Section A.3 of the Building and Personal Property Coverage Form, Covered Causes of Loss, states "[s]ee applicable Causes of Loss Form as shown in the Declarations."  The Declarations, in turn, contain another section called Causes of Loss - Special Form .  The Causes of Loss - Special Form states the specific causes of loss covered and excluded under the Policy.  Triple-S UMF ¶ 25 and AJC's CSUMF ¶ 25; <u>see also</u> Docket No. 53, Exhibit 6.

The Causes of Loss- Special Form provides, in its pertinent part, as follows:

> **A. COVERED CAUSES OF LOSS**
> When Special is shown in the Declarations, Covered Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS unless the loss is:
>> 1. Excluded in Section B., Exclusions; or
>> 2. Limited in Section C., Limitations; that follow.
>
> **B. EXCLUSIONS**
> 1.    We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
> ....
> 2.  We will not pay for loss or damage caused by or resulting from any of the following:
> ....
>
>> d. (1) ...
>>    (2) ...
>>    (3) ...
>>    (4) ...
>>    (5) ...
>>    (6)  Mechanical breakdown, including rupture or bursting caused by centrifugal force.  However, this does not apply to any resulting loss or damage caused by elevator collision.;
>>    (7)  The following causes of loss to personal property:
>>    (a) Dampness or dryness of atmosphere;
>>    (b) Changes in or extremes of temperature; or
>>    (c) Marring or scratching.

AJC Logistics, LLC, et al v. Economy International Services, Inc., et al
Civil No. 11-1834 (FAB/CVR)
Report and Recommendation
Page 8

_____

<u>See</u>, Docket No. 53, Exhibit 6.

Because the Causes of Loss-Special Form specifically excludes coverage for equipment breakdown, the insured requested and Triple-S issued the "Equipment Breakdown" Endorsement. Triple-S UMF ¶ 29 and AJC's CSUMF ¶ 29. The Equipment Breakdown Endorsement provides coverage for equipment breakdown that was otherwise excluded in the Causes of Loss-Special Form. Triple-S UMF ¶ 30 and AJC's CSUMF ¶ 30. In AJC's words, the Equipment Breakdown Endorsement eliminates the mechanical breakdown exclusion in the Causes of Loss - Special Form. AJC's CSUMF ¶ 30.

The Equipment Breakdown Endorsement provides, in its pertinent part, as follows:

A.  The Building and Personal Property Coverage Form is
modified as follows:
    Additional Coverages
    The following is added to 4. Additional Coverages:
    **Equipment Breakdown**
    (1)   We will pay for loss caused by or resulting from an
    "accident" to "covered equipment."  As used in this
    Additional Coverage, an "accident" means direct physical
    loss as follows:
                    (a) mechanical breakdown, including rupture or
                    bursting caused by centrifugal force;
    . . . .
    (2) Unless otherwise shown in a Schedule, the following
        coverages also apply to loss caused by or resulting from an
        "accident" to "covered equipment".  These coverages do
        not provide additional amounts of insurance.
                    (a) ...
                    (b) ...
                    (c) Spoilage
                        (I) We will pay for your loss of "perishable
                        goods" due to spoilage.
                        (ii) We will also pay for your loss of
                        "perishable goods" due to contamination
                        from the release of refrigerant, including
                        but not limited to ammonia.

AJC Logistics, LLC, et al v. Economy International Services, Inc., et al
Civil No. 11-1834 (FAB/CVR)
Report and Recommendation
Page 9

---

(iii) We will also pay any necessary expenses you incur to reduce the amount of loss under this coverage.  We will pay for such expenses to the extent that they are not exceed the amount of loss that otherwise would have been payable under this coverage.

(iv) if you are unable to replace the "perishable goods" before its anticipated sale, the amount of our payment will be determined on the basis of the sales price of the "perishable goods" at the time of the "accident," less discounts and expenses you otherwise would have had. Otherwise, our payment will be determined in accordance with the Valuation condition.

The most we will pay for loss of damage under this coverage is $25,000.00 unless otherwise shown in a Schedule.

Docket No. 53, Exhibit 7.

In addition to the Equipment Breakdown Endorsement, Economy purchased a separate coverage contained on an endorsement called "Spoilage Coverage." See, Docket No. 53, Exhibit Nos. 5 and 9.  This endorsement "modifie[d] insurance provided under the Building and Personal Property Coverage Form." Id.  The Spoilage Coverage states it was "extended to insure against direct physical loss or damage by the Covered Causes of Loss, but only with respect to coverage provided by this endorsement."  The Spoilage Endorsement includes "'perishable stock' at the premises owned by you or by others that is in your care, custody or control." Id. It further replaces Paragraph A.3. COVERED CAUSES OF LOSS (contained in the Causes of Loss-Special form) so that the insured includes as a covered clause of loss "change in temperature or humidity resulting from

AJC Logistics, LLC, et al v. Economy International Services, Inc., et al
Civil No. 11-1834 (FAB/CVR)
Report and Recommendation
Page 10

mechanical breakdown or failure of refrigerating" and/or "Power Outage, meaning change in temperature or humidity. . ." Docket No. 53, Exhibit 9, p. 2.  It also allowed the insured to include as a COVERED CAUSES OF LOSS "change in temperature or humidity resulting from mechanical breakdown." Id. [6]  However, as it appears from the "Commercial Property Declaration," AJC only obtained the endorsement for "Power Outage". Id.

The parties agreed that since in this case the loss to frozen food commodities owned by AJC was not caused by a power outage, the coverage provided by the Spoilage Coverage Endorsement does not apply.   Triple-S UMF ¶ 37 and AJC's CSUMF ¶ 37.[7]  In fact, AJC even considers the mention of the "Power Outage" coverage or the "change in temperature" exclusion to be "irrelevant to this case." (Docket No, 62, p. 2, ¶ 3)

None of the Plaintiffs are listed as insureds or additional insureds under the Policy. See, Docket No. 53, Exhibit 5.

AJC has not received any payment from Lloyd's for the loss alleged in the Amended Complaint.  Triple-S UMF ¶ 47 and AJC's CSUMF ¶ 47.[8]

AJC has not received any payment from Lloyd's for reimbursement of expenses related to the loss of foodstuff. Triple-S UMF ¶ 48 and AJC's CSUMF ¶ 48.[9]

---

[6] In other words, the Spoilage Endorsement allows the insured to include as a Covered Cause of Loss in the Causes of Loss- Special Form "change in temperature" as a result "from mechanical breakdown" or "change in temperature" due to "power outage." Plaintiffs denied the scope and purpose of the Spoilage Endorsement.  AJC's CSUMF ¶ 35.  As previously indicated, however, the interpretation of terms, conditions, exclusions and limitations of the Policy is an issue of law and not a disputed fact.

[7] AJC's qualification of Triple-S UMF ¶ 37 including its own legal interpretation of the Policy does not change the uncontested fact that the loss in this case was not caused by a power outage.

[8] Again, AJC's qualification of statement number 47 does not contest this fact.

[9] AJC's qualification of statement number 48 does not contest this fact.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." Cortés-Irizarry v. Corporación Insular, 111 F.3d 184, 187 (1st Cir. 1997). A fact is deemed "material" if it potentially could affect the outcome of the suit. Id. Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Id.

At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." Greenburg v. Puerto Rico Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). In fact,

"[o]nly if the record, viewed in [this] manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997).

"Cross-motions for summary judgment do not alter the summary judgment standard, but instead simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on the facts that are not disputed." Wells Real Estate Inv. Trust II, Inc. v. Chardon/Hato Rey P'ship, S. E., 615 F.3d 45, 51 (1st Cir. 2010) (citing Adria Int'l Group, Inc. v. Ferré Development, Inc., 241 F.3d 103, 107 (1st Cir. 2001)) (internal quotation marks omitted). Although each motion for summary judgment must be decided on its own merits, each motion need not be considered in a vacuum. Wells Real Estate Inv. Trust II, Inc., 615 F.3d at 51 (quoting P.R. American Ins. Co. v. Rivera-Vázquez, 603 F.3d 125, 133 (1st Cir. 2010)) (internal quotation marks omitted). "Where, as here, cross-motions for summary judgment are filed simultaneously, or nearly so, the district court ordinarily should consider the two motions at the same time, applying the same standards to each motion." Wells Real Estate Inv. Trust II, Inc., 615 F.3d at 51 (quoting P.R. Am. Ins. Co. v. Rivera–Vázquez, 603 F.3d at 133) (internal quotation marks omitted).

## LEGAL DISCUSSION

**A.     Insurance Contract Interpretation Generally.**

The parties agree that Puerto Rico law governs the construction of Triple-S' insurance policy in this case.

The Puerto Rico Insurance Code (the "Code") governs insurance contracts in Puerto Rico. The terms of the insurance contract are contained in the policy. Natal Cruz v. Negrón,

2013 T.S.P.R. 67, *5 (citing Maderas Tratadas v. Sun Alliance et. al., 185 D.P.R. 880 (2012)). The Policy is a written instrument in which a contract of insurance is set forth, and it is the law between the parties. P.R. Laws Ann. tit. 26 § 1114(1).

Under the Code, the court must construe an insurance contract "according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any lawful rider, endorsement, or application attached to and made part of the policy." P.R. Laws Ann. tit. 26 § 1125; see also, Natal Cruz v. Negrón, 2013 T.S.P.R. 67, *5-6; Marina Aguila v. Den Caribbean, Inc., 490 F.Supp.2d 244, 248 (D.P.R. 2007) (citing PFZ Props., Inc. v. Gen. Accident Ins. Co., 136 D.P.R. 881, 902 (1994) and Metlife Capital Corp. v. Westchester Fire Ins. Co., 224 F.Supp.2d 374, 382 (D.P.R. 2002)). When interpreting contracts, the court must read contract provisions in relation to one another, giving unclear provisions the meaning which arises from considering all provisions together. P.R. Laws Ann. tit. 31, § 3475. By doing so, the court should assign terms their common meanings, and any term having multiple meanings should be read in the sense that is most suitable to give it effect. P.R. Laws Ann. tit. 31, § 3474.

When the Code does not provide an interpretative approach applicable to a particular situation, the court looks to the Puerto Rico Civil Code as a supplemental source of insurance contract interpretation law. See Natal Cruz, 2013 T.S.P.R. 67, n. 12 and Marina Aguila, 490 F.Supp.2d at 249 (citing Casanova v. P.R.-Am. Ins. Co., 6 P.R. Offic. Trans. 960, 106 D.P.R. 689 (1978) and González v. John Hancock Mut. Life Ins. Co., 927 F.2d 659, 660 (1st Cir. 1991)). In this regard, Article 1233 of the Puerto Rico Civil Code provides that, "if the terms of a contract are clear and leave no doubt as to the intentions of the contracting

parties, the literal sense of its stipulations should be observed." P.R. Laws Ann. tit. 31 § 3471.

Under Puerto Rico law, insurance contracts are considered contracts of adhesion that must be liberally interpreted in favor of the insured. Marina Aguila, 490 F.Supp.2d at 248 (citing Quiñones López v. Manzano Pozas, 141 D.P.R. 139, 155 (1996); Metlife Capital, 224 F.Supp.2d at 383); see also, MAPFRE Puerto Rico v. Guadalupe-Delgado, 613 F. Supp. 2d 213, 217 (D.P.R. 2009)(Besosa, J.)(citing Guerrido García v. U.C.B., 143 D.P.R. 337, 348 (1997) and Nahan v. Pan Am. Grain Mfg.Co, Inc., 62 F.Supp. 2d 419 at n. 5 (D.P.R. 2009). In Natal Cruz, the Puerto Rico Supreme Court recently reiterated that exclusionary language (setting forth circumstances in which the insurance policy does not provide coverage) should be interpreted restrictively in order to comply with the policy's intent of providing coverage to the insured. Natal Cruz, 2013 T.S.P.R. 67, *5; see also Marina Anguila, 490 F.Supp.2d at 248-249 (internal citations omitted). The court further reiterated this general rule does not require courts to interpret a clear and unambiguous clause that favors the insurer in a manner that benefits the insured. Natal Cruz, 2013 T.S.P.R. 67, *5 and MAPFRE Puerto Rico, 613 F. Supp. 2d at 217 (quoting Metlife Capital, 224 F.Supp.2d at 382). Therefore, when the terms, conditions, and exclusions included in an insurance policy are clear and unambiguous, the court must interpret and enforce the policy in accordance with the will of the parties. Marina Aguila, 490 F.Supp.2d at 249 and Natal Cruz, 2013 T.S.P.R. 67 at *5. (Internal citation omitted). In the absence of ambiguity, the contract terms bind the parties. Id.

The court determines, as a matter of law, whether an insurance policy's terms, conditions, and exclusions are clear and unambiguous. See MAPFRE Puerto Rico, 613 F.

Supp. 2d at 217 (quoting Couch on Insurance 3d Ed. § 21:13 (noting that "[w]hether or not a contract of insurance is ambiguous is a question of law for the court, in keeping with the general rule that the construction and effect of a written contract of insurance is a matter of law, to be determined by the court and not by the jury, where there is no occasion to resort to extrinsic evidence for the purpose of resolving ambiguity.").

As explained in MAPFRE Puerto Rico, the First Circuit Court of Appeals has clarified that, "while ambiguous terms may be constructed to favor an insured, we may not find a term ambiguous merely because it eliminated coverage." 613 F.Supp. 2d at 217 (citing Littlefield v. Acadia Ins. Co., 392 F.3d 1, 8 (1st Cir. 2004)). In other words, "[c]lear provisions should not be strained to suggest ambiguity." Id. (citing Andover Newton Theological School, Inc. v. Continental Casualty Co., 930 F.2d 89, 93 (1st Cir. 1991)); see also Couch on Insurance 3d Ed. § 22:10 (noting that "if there is no ambiguity in the insurance contract it is the duty of the court to apply to the words used their ordinary meaning and not favor either party in the construction.").

Similarly, this Court held in Metlife Capital Corp, 224 F.Supp.2d at 382, that under Puerto Rico law, when the terms, conditions, and exclusions listed in a policy are clear and give no margin for ambiguities or differences in interpretation, they must be enforced in accordance with the will of the parties.

As reiterated by the Puerto Rico Supreme Court in Natal Cruz, the same is true with respect to the exclusions contained within an insurance policy, that serve to limit the general coverage agreement. Natal Cruz, 2013 T.S.P.R. 67, *5 (internal citations omitted). Thus, if clear and unambiguous, the exclusion shall be interpreted in accordance with its function within the policy. Similarly, if an exclusion clause is clear and unambiguous, then

it does not afford coverage despite whatever inferences may arise from the other clauses of the contract. Id. at n. 13.

## B.      Policy Number CP-081038479-0/000.

In this case, a thorough reading of the complete Policy confirms that its terms are clear and unambiguous.  This includes the language of the Building and Personal Property Coverage Form (with its Covered Causes of Loss and Exclusions sections as detailed in the Causes of Loss-Special Form).   Thus, there is no need to apply the anti-insurer rule or to consider extrinsic evidence.   See Couch on Insurance § 22:17 (West 3rd ed. 2005) (noting that "Courts must first interpret the policy language; there is no need to apply the anti-insurer rule when the policy language is clear.").

Accordingly, and as mandated by the Puerto Rico Insurance Code, this court must construe the Policy "according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any lawful rider, endorsement, or application attached to and made part of  the policy." P.R. Laws Ann. tit. 11 § 1125.  While doing that, the Policy provisions must be enforced as written and the literal language of the policy be observed. See  P.R. Laws Ann. tit. 31 § 3471. See also Couch at § 21:4 (noting that "where the policy language is clear and unambiguous the court must enforce it as it is written and cannot impose a strained construction in order to reach a different result than that demanded by the policy provisions.").

Plaintiffs AJC invites this court in its motion for summary judgment to read the Policy as providing coverage limit of $500,000.00 for the damage caused to its goods/commodities, as section A.1.c. of the Building and Personal Property Coverage Form provides said coverage limit for damage caused to "personal property of others" under the

AJC Logistics, LLC, et al v. Economy International Services, Inc., et al
Civil No. 11-1834 (FAB/CVR)
Report and Recommendation
Page 17

case, custody or control of Economy, while the same is located in Economy's facilities.[10]

AJC further argues, that since the Policy expressly excludes loss or damage as a result of a mechanical breakdown, Economy paid additional premium and "bought back" coverage for loss or damage as a result of a mechanical breakdown, via the Equipment Breakdown Coverage; thus, making an equipment breakdown a covered cause of loss under the Policy's Cause of Loss-Special Form. Plaintiffs further argue that, since the Equipment Breakdown Coverage (purchased as an additional coverage by Economy) provides that Triple-S "will pay for loss caused by or resulting from an 'accident' to 'covered equipment,'" and "accident" is defined by the Equipment Breakdown Coverage to include "mechanical breakdown," the Policy covers the loss to "personal property of others" caused by a "mechanical breakdown".[11]

AJC's argument, however, fails to consider the <u>full</u> language of the Equipment Breakdown Coverage  and the sub-limit established therein for its loss.  Furthermore, to concede to AJC's argument this court would need to stop reading the Equipment Breakdown Coverage at Section A(1) and ignore the clear and unambiguous restrictions, conditions and limitations that follow.  More specifically, and although mechanical breakdown is a covered cause of loss under the Policy's Cause of Loss-Special form, it is so

---

[10] Section A.1.c specifically provides that Triple-S "payment for loss of or damage to personal property of others will only be for the account of the owner of the property."

[11] The Court has also reviewed the cases cited by Plaintiffs in support of their contention regarding the applicable coverage limits, to wit: <u>General Star Indem. Co v. Custom Editions Upholstery Corp.</u>, 940 F. Supp. 645, 653-656 (S.D.N.Y. 1996) and <u>Green Meadow Bean Co.v. Nationwide Agribusiness Ins. Co.</u>, 2010 WL 1427271 (D. Minn. 2010).  Both cases are unpersuasive for many reasons. For example, in <u>Green Meadow Bean Co.</u> the Court analyzed the Policy under Minnesota law under which the court may also consider the "reasonable expectations of the insured", regardless of whether the policy language is ambiguous. In fact, in this case the court considered extrinsic evidence to further support its conclusion. That is not what P.R. law mandates in this case to interpret the Policy. Moreover, it is clear from the Court's opinion that the Policy in said case did not have the clear coverage limit that was expressly included in the Equipment Breakdown Coverage here at issue.  As such, <u>Green Meadow Bean Co.</u> is inapposite. The same is true with the <u>General Star Indem.Co.</u> case.

in accordance with the limits and conditions provided by the Equipment Breakdown Coverage.  In this case, Section A(2)(c)(I) clearly limits AJC's loss for perishable goods that were damaged or destroyed due to spoilage to $25,000.00.  <u>See also</u> Section A(5)(g)(defining "perishable goods" as personal property maintained under controlled conditions for its preservation, and susceptible to loss or damage if the controlled conditions change).  There is no other reasonable interpretation of the Policy and the corresponding endorsement.

In its Reply to Triple-S' Opposition to Plaintiffs' Motion for Summary Judgment (Docket No. 62) and again in its Opposition to Triple-S' Motion for Summary Judgment (Docket No. 56, pp. 8-9), AJC suggests - for the first time - a new reading of Section A(2)(c)(I) to support its contention that the Policy provides a $500,000.00 limit of insurance for the loss suffered.  It now contends that, since the last part of Section A(2)(c)(I) provides that the $25,000.00 coverage limit is applicable "unless otherwise shown in a Schedule," the  "unless otherwise shown in a Schedule" refers to the limits of $500,000.00 contained in the Declarations of the Policy.[12]   This new reading is not only disingenuous, but contrary to Puerto Rico insurance and contract law under which "[i]f an exclusion clause is clear and unambiguous and applicable, then it does not afford coverage despite whatever inferences may arise from the other clauses in the contract. Each exclusion clause should be read independently from the others and according to its functions in the policy's general agreement." <u>See</u> <u>Nahan</u>, 62 F.Supp.2d at 423–24 (<i>quoting</i> from the Puerto

---

[12] In support if this new reading, Plaintiffs invite this Court to consider extrinsic evidence, including, among others, the testimony of Mr. Richard Wilson, a staff adjuster of the Hartford Steam Boiler Inspection and Insurance Co. The Court, however, reminds Plaintiffs that Puerto Rico's insurance and contract law previously discussed prohibit extrinsic evidence to interpret or alter the contents of a clear and unambiguous insurance contract.

Rico Supreme Court's case <u>Melendez Piñeiro v. Levitt Sons</u>, 129 D.P.R. 521 (1991)).   The same is true with respect to the clear coverage limits of the Policy.  Here, the Endorsement Breakdown Coverage is very clear and unambiguous in limiting the corresponding coverage for spoilage due to equipment breakdown to $25,000.00 and no other Schedule provides a higher coverage limit for AJC's loss.  Although there is a separate coverage in the Spoilage Coverage Endorsement, it is uncontested that the same does not apply to this case.  Triple-S UMF ¶ 37 and AJC's CSUMF ¶ 37.

Moreover, what Plaintiffs propose is that the Schedule that "shows otherwise" under the "unless otherwise shown <u>in a Schedule</u>" reference in Section A.(2)(c) of the Equipment Breakdown, is the last sentence of the <u>same</u> Equipment Breakdown Coverage that unequivocally and explicitly limits coverage to $25,000.00 for loss of perishable good due to spoilage caused by an accident to covered equipment.  (Docket No. 56, pp. 7-11). Again, said reading will require this Court to ignore the clear and unambiguous limitations under the Equipment Breakdown Coverage and the rules of hermeneutics contemplated in Puerto Rico insurance and contract law that were previously discussed.[13]

Although Plaintiffs have a direct action against Triple-S as Economy's and Espinosa's insurer under Puerto Rico law,  <u>see</u> P.R. Laws Ann. tit 26 § 2003, it does not mean this

---

[13] Plaintiffs also insist the Policy is an "ALL RISK" Policy, giving a significant weight to the general description of the policy included in the Renewal Declaration (Docket No. 53, Exhibit 5) stating that "Prem. No. 1 Bldg. No. 1 Mario Juliá Industrial Park Lote 12 Calle A Guaynabo PR on contents proper of a cold storage while in a one story concrete building." (Docket No. 47, p. 13) (Emphasis added).  This is nothing but disingenuous. As mandated by the Puerto Rico Insurance Code, this court must construe the Policy "according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any lawful rider, endorsement, or application attached to and made part of  the policy." P.R. Laws Ann. tit. 11 § 1125. (Emphasis added).  In any event, as with the caption or title of an endorsement, this sentence cannot override the Policy provisions if the Policy's provisions unambiguously show the intent of the parties.  <u>See e.g.</u> <u>Kemper Nat. Ins. Companies v. Heaven Hill Distilleries, Inc.</u>, 82 S.W.3d 869 (Ky. 2002).

Court must read the Policy as if it was tailored to meet AJC's specific needs and requirements.

Accordingly, it is recommended that Plaintiffs' Motion for Summary Judgment (Docket No. 45) be **DENIED**. For the same reasons, and since this court's recommendation is consistent with the arguments raised by Triple-S in sections D, E and F of its Motion for Summary Judgment regarding the coverage limit set forth in the Policy, it is recommended that Triple-S' request for summary judgment regarding the coverage limit be **GRANTED.**[14]

## B.   Triple-S' Request to Dismiss Lloyd's Claims.

In section G of its Motion for Summary Judgment, Triple-S requests that Lloyd's cause of action be dismissed as it is uncontested that Lloyd's has not made a payment to AJC for its loss and, therefore, it cannot subrogate the rights of AJC without paying to its insured for the loss sustained. (Docket No. 52, pp. 22-23). It further alleges, "the subrogation of an indemnity insurer arises by operation of law when it makes payment to the insured, that is, the payment of an obligation by a surety ordinarily entitles him to subrogation of all the rights, remedies and equities of the oblige." Id. at p. 23 (citing Aseg. Lloyd's London v. Compañía de Desarrollo Comercial de P.R. et al., 126 D.P.R. 251 (1990)(internal citations omitted)).

Plaintiffs, in turn, maintain that even though Lloyd's has yet to indemnify or reimburse AJC under the Lloyd's Policy, it was joined as a party with real an direct interest

---

[14] Whether a check was issued and received by Economy for the damaged compressor and for $25,000.00 for the spoiled goods as asserted by Triple-S is unclear as the letter submitted in support of Triple-S UMF ¶ 18 states, in its pertinent part, "[p]lease sign and notarized the 'Proof of Loss' document and return it ti Triple-S Property, in order to proceed with the corresponding payment." (Docket No. 53, Exhibit 4, p. 1).

to claim subrogation for the amount paid, or to be paid, to AJC under Fed. R. Civ. Pro. 20(a). (Docket No. 56, pp. 11-13). They further allege that AJC maintained in place and insurance on the goods/commodities in question, via its broker, to Lloyd's and that AJC's claim has been accepted and is under evaluation by Lloyd's as to the actual amount of loss. Therefore, it can be joined in this action. The Court does not agree.

Insurers are deemed to be real parties in interest "only when direct actions are maintained against them or when they become subrogated to the rights of their insureds after payment of the loss." Compton v. D'Amore, et al., 101 A.D.2d 800, 475 N.Y.S.2d 463, 466 (1984)(internal citations omitted)(emphasis added); see also Couch on Insurance 3d Ed. §222:5 and §222:20;  Lumbermen's Mut. Cas.Co. v. Elbert, 348 U.S. 48 (1954) and United States v. Atena Cas. & Sur. Co., 338 U.S. 366 (1949); and P.R. Laws Ann. tit. 31 § 3250 .

Thus, it is clear that until Lloyd's makes payment under Policy Number MC10ACXU it cannot subrogate and is not a real party in interest to this case.

Accordingly, it is recommended that Triple-S' request to dismiss Lloyd's claim be **GRANTED**.

## CONCLUSION

In view of the foregoing, it is recommended that Plaintiffs' Motion for Summary Judgment (Docket No. 45) be **DENIED** and that Triple-S' Motion for Summary Judgment (Docket No. 52) be **GRANTED.**

IT IS SO RECOMMENDED.

Since the Court has already scheduled a Pretrial Conference in this case for September 5, 2013 and Jury Trial is set for September 16, 2013, the period of time to file any opposition to this Report and Recommendation needs to be reduced. As such, the parties are granted until **September 5, 2013** to file their simultaneous opposition, if any, unless they first seek and obtain an extension of time from the Presiding District Judge.

In San Juan, Puerto Rico, this 28th day of August of 2013.

s/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ-RIVE
UNITED STATES MAGISTRATE JUDGE